**SHOOK, HARDY & BACON L.L.P.**
Thomas J. Sullivan
N.J. Attorney No. 248542018
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, Pennsylvania 19103
Telephone:  215-278-2555
tsullivan@shb.com

*Attorneys for Defendant SharkNinja Operating LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PATRICIA BROWN, on behalf of herself and all others similarly situated, | Case No.: 1:24-cv-11295-ESK-MJS |
| Plaintiff, | **BRIEF IN SUPPORT OF MOTION TO DISMISS AND TO STRIKE THE CLASS ALLEGATIONS** |
| vs. | |
| SHARKNINJA OPERATING LLC, | |
| Defendant. | Motion Day: May 19, 2025 |

## **TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT .........................................1

PROCEDURAL HISTORY.................................................................................2

FACTUAL BACKGROUND ..............................................................................2

LEGAL STANDARD..........................................................................................3

I.    Motion to Dismiss..................................................................................3

II.   Motion to Strike the Class Allegations..............................................4

ARGUMENT .......................................................................................................5

I.    Plaintiff has not alleged an ascertainable loss. ................................5

    A.    Plaintiff has not pleaded facts showing any loss of the benefit of the bargain. ........................................................................6

    B.    Plaintiff has not pleaded facts showing any out-of-pocket loss..........12

II.   The Court should strike the class allegations because it is apparent from the face of the complaint that this case cannot proceed as a class action...........................................................................................15

    A.    The proposed class is not ascertainable. ...........................................15

    B.    The proposed class necessarily includes many uninjured consumers who lack Article III standing. ...........................................18

CONCLUSION ...................................................................................................24

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................3

*Brown v. SharkNinja Operating LLC*,
    No. 1:23-cv-21135-ESK-MJS, Doc. 21 (D.N.J. Oct. 23, 2024).................*passim*

*Buck v. Hampton Twp. Sch. Dist.*,
    452 F.3d 256 (3d Cir. 2006) .................................................................9

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013) ...............................................................15

*Clark v. McDonald's Corp.*,
    213 F.R.D. 198 (D.N.J. 2003)...............................................................4

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)..............................................................................4

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007) .................................................................5

*Green v. Green Mountain Coffee Roasters, Inc.*,
    279 F.R.D. 275 (D.N.J. 2011)................................................21, 22, 23

*Hayes v. Wal-Mart Stores, Inc.*,
    725 F.3d 349 (3d Cir. 2013) ...............................................................16

*Huber v. Simon's Agency, Inc.*,
    84 F.4th 132 (3d Cir. 2023) ...............................................................20

*In re Asacol Antitrust Litig.*,
    907 F.3d 42 (1st Cir. 2018)................................................................22

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ........................................................9, 10

ii

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008) .........................................................................20, 22

*In re Riddell Concussion Reduction Litig.*,
  77 F. Supp. 3d 422 (D.N.J. 2015) ...................................................................6

*In re Ry. Indus. Emp. No-Poach Antitrust Litig.*,
  395 F. Supp. 3d 464 (W.D. Pa. 2019)..........................................................5, 20

*Lee v. Carter-Reed Co.*,
  4 A.3d 561 (N.J. 2010) .................................................................................14, 15

*Marcus v. BMW of North. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012) ...............................................................15, 16, 17

*Martinez v. Equifax Inc.*,
  2016 WL 226639 (D.N.J. Jan. 19, 2016)........................................................18

*Martinez v. TD Bank USA, N.A.*,
  2017 WL 2829601 (D.N.J. June 30, 2017)......................................................4

*Mason v. Coca-Cola Co.*,
  774 F. Supp. 2d 699 (D.N.J. 2011).............................................................5, 19

*Mladenov v. Wegmans Food Markets, Inc.*,
  124 F. Supp. 3d 360 (D.N.J. 2015).........................................................*passim*

*Mr. Dee's Inc. v. Inmar, Inc.*,
  127 F.4th 925 (4th Cir. 2025) ........................................................................21

*Peruto v. TimberTech, Ltd.*,
  126 F. Supp. 3d 447 (D.N.J. 2015)..................................................................7

*Pilgrim v. Universal Health Card, LLC*,
  660 F.3d 943 (6th Cir. 2011) ...........................................................................5

*Robey v. SPARC Grp. LLC*,
  311 A.3d 463 (N.J. 2024) ...............................................................6, 12, 13, 14

*Smajlaj v. Campbell Soup Co.*,
  782 F. Supp. 2d 84 (D.N.J. 2011)...................................................................18

*Solo v. Bed Bath & Beyond, Inc.*,
   2007 WL 1237825 (D.N.J. Apr. 26, 2007) .......................................................6, 9

*Stewart v. Smart Balance, Inc.*,
   2012 WL 4168584 (D.N.J. June 26, 2012) ......................................................7, 8, 9

*Szczubelek v. Cendant Mortg. Corp.*,
   215 F.R.D. 107 (D.N.J. 2003) .........................................................................23

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) .........................................................................................19

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) .........................................................................................20

**Statutes**

N.J. Stat. Ann. § 56:8-19 .......................................................................................5

**Rules**

Fed. R. Civ. P. 8 ....................................................................................................3

Fed. R. Civ. P. 8(a)(2) ..........................................................................................3

Fed. R. Civ. P. 12(f) .............................................................................................4

Fed. R. Civ. P. 23 .................................................................................................19

Fed. R. Civ. P. 23(b)(3) ..................................................................................15, 20

Fed. R. Civ. P. 23(c)(1)(A) ..................................................................................4

Fed. R. Civ. P. 23(d)(1)(D) ..................................................................................4

**Other Authorities**

1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 3:4 (17th
   ed. 2020) .........................................................................................................4

## <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Following this Court's dismissal of her first complaint, Plaintiff Patricia Brown is back seeking damages for SharkNinja's allegedly false claim that its premium nonstick frying pans "won't stick, chip, or flake." The Court dismissed the initial complaint because Brown failed to show she was personally damaged. The second complaint is largely unchanged, except for Brown's new allegation that the nonstick surface of her Ninja pan never worked, a fact she inexplicably omitted the first time. But this belated allegation does not save her claim. Even if Brown's pan did stick, she fails to plead an ascertainable loss of money or property, as required in a private action under the New Jersey Consumer Fraud Act ("NJCFA"). Brown fails to allege facts showing she received a product worth less than the product she was promised, or that she received a product that was unusable and therefore worthless—the two theories of loss the NJCFA recognizes. As a result, Brown's sole cause of action under the NJCFA fails and the complaint must be dismissed.

Even if the Court concludes Brown's individual claim survives dismissal, it is apparent from the face of the complaint that the claim is not suitable for class treatment. Brown's proposed class is not ascertainable and contains many members whose pans did not stick, chip, or flake and thus are not injured and therefore lack Article III standing. Because no amount of discovery can cure these defects the Court should strike the class allegations.

## PROCEDURAL HISTORY

Last October, this Court dismissed Brown's first complaint for failure to state a claim, but gave Brown leave to amend. *Brown v. SharkNinja Operating LLC*, No. 1:23-cv-21135-ESK-MJS, Doc. 21 (D.N.J. Oct. 23, 2024). The Court held that Brown failed to allege she was personally affected by SharkNinja's alleged misrepresentations regarding its Ninja nonstick cookware products because she did not allege that the frying pans she bought chipped, flaked, or lost their nonstick properties. *Id.* at 8-10. Rather than amend her complaint in this Court, Brown filed a slightly revised complaint as a new state court action, which SharkNinja removed to this Court on December 18, 2024 (Doc. 1).

## FACTUAL BACKGROUND

Brown bought two 12-inch Ninja Foodi NeverStick Premium nonstick frying pans from Macy's website in September 2021. Compl. ¶ 30. Before buying the pans, Brown alleges she saw the NeverStick brand name, SharkNinja's claim that the pan "never sticks chips, or flakes" or "won't stick, chip, or flake" compared to competitor nonstick products, and the claim that because the pan is manufactured with a maximum temperature of 30,000 degrees it won't rapidly lose its nonstick surface like other nonstick pans. *Id.* ¶ 31. Although Brown never alleged it in her first complaint, she now claims the nonstick surface of her Ninja pan "never worked" and food stuck to the pan. *Id.* ¶ 33. As a result, Brown alleges the Ninja pan she

2

received was worth less than the product she was promised. *Id.* ¶ 37. She purports to assert a single cause of action under the NJCFA and seeks to represent a class of New Jersey consumers who bought certain Ninja cookware products during the applicable limitations period.

## LEGAL STANDARD

### I.    Motion to Dismiss

A court should dismiss a complaint if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and more than "labels and conclusions." *Iqbal*, 556 U.S. at 678. Legal conclusions are not "facts" for Rule 8 purposes. *Id.* at 678-79; *Twombly*, 550 U.S. at 555. Nor is it enough for a plaintiff to allege facts "merely consistent with" liability or showing only that entitlement to relief is *possible*. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## II.    Motion to Strike the Class Allegations

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (cleaned up). Rule 23(c)(1)(A) requires courts to determine whether to certify an action as a class action "[a]t an early practicable time after a person sues[.]" Pursuant to Rule 23(d)(1)(D), "the court may issue orders that … require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Similarly, a court may strike the class allegations at the pleading stage under Rule 12(f) "if the complaint demonstrates that a class action cannot be maintained." *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 368 (D.N.J. 2015); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 n.3 (D.N.J. 2003) (explaining that a defendant may move to strike class action allegations before discovery "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met"); *see* 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 3:4 (17th ed. 2020) (motions to strike "are appropriate where the unsuitability of class treatment is evident on the face of the complaint").

A court should strike the class allegations when it is clear no amount of discovery could make the claims suitable for class treatment. *See Martinez v. TD Bank USA, N.A.*, 2017 WL 2829601, at *12 (D.N.J. June 30, 2017) (striking the class

4

allegations because "[n]o amount of additional class discovery will alter th[e] conclusion" that the proposed class "is a fail-safe class"); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (affirming striking of class allegations because plaintiffs failed to "explain what type of discovery or what type of factual development would alter the central defect in th[e] class claim").

On a motion to strike the class allegations, "the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of [Rule] 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 498 (W.D. Pa. 2019) (collecting cases).

## ARGUMENT

### I.    Plaintiff has not alleged an ascertainable loss.

"To state a claim under the NJCFA, a plaintiff must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff." *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007). The NJCFA provides a private remedy only to a person who suffers an "ascertainable loss of moneys or property." N.J. Stat. Ann. § 56:8-19. To be ascertainable, "the loss must be capable of calculation, and not just hypothetical or illusory." *Mladenov*, 124 F. Supp. 3d at 374; *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 703-04 (D.N.J. 2011) ("The certainty implicit in the concept of an ascertainable loss is that it is quantifiable or

measurable.") (cleaned up). A plaintiff must "plead specific facts setting forth and defining the ascertainable loss suffered." *Solo v. Bed Bath & Beyond, Inc.*, 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007).

There are two relevant theories to ascertain losses under the NJCFA: (1) loss of the benefit of the bargain; and (2) out-of-pocket loss. *Robey v. SPARC Grp. LLC*, 311 A.3d 463, 467 (N.J. 2024). "Out-of-pocket damages represent the difference between the price paid and the actual value received, while benefit-of-the-bargain principles allow recovery for the difference between the price paid and the value of the property had the representations been true." *Id.* (cleaned up). Brown has not plausibly alleged an ascertainable loss under either theory.

A.    Plaintiff has not pleaded facts showing any loss of the benefit of the bargain.

As the Court stated in its order dismissing Brown's first complaint, a claim that she failed to receive the benefit of the bargain requires more than just an unmet expectation. "Rather, [Brown] must have received a product worth objectively less than what was reasonably expected and quantify the difference between the product promised and the product received." *Brown*, No. 1:23-cv-21135-ESK-MJS, Doc. 21, at 9-10. "Failure to quantify this difference in value results in the dismissal of a claim." *Mladenov*, 124 F. Supp. 3d at 375. "Courts in this District have required plaintiffs to specify the price paid for the product and the price of comparable products to adequately state a claim under the NJCFA." *In re Riddell Concussion*

*Reduction Litig*., 77 F. Supp. 3d 422, 438-39 (D.N.J. 2015) (collecting cases); *Peruto v. TimberTech, Ltd*., 126 F. Supp. 3d 447, 459 (D.N.J. 2015).

Brown has not quantified the difference between the product she was promised and the product she received. Brown alleges that she bought the 12-inch Ninja frying pan for $39.99 and that a "comparable" Farberware brand nonstick 12-inch pan sells for $19.99. Compl. ¶ 36. She says she was promised a premium nonstick pan valued at $39.99 but received the equivalent of a nonstick pan worth only $19.99. *Id.* ¶ 37. This does *not* quantify the difference between the product promised and the product received: Brown has not shown that the product she received was worth less than $39.99, and more specifically, Brown has not shown she received the equivalent of the $19.99 Farberware nonstick pan.

Brown alleges she was promised a premium quality pan with a nonstick surface but received a pan that did ***not*** have a functioning nonstick surface. Thus, the value of the product Brown received is the value of a pan made of material of comparable quality and durability to the Ninja pan, but which does not have a nonstick surface—and that is *not* the Farberware pan. Brown fails to allege whether a comparable product without a nonstick surface exists, or if it does, what it costs.

*Stewart v. Smart Balance, Inc.*, 2012 WL 4168584 (D.N.J. June 26, 2012) is instructive. There, plaintiffs alleged that Smart Balance misrepresented its "Fat Free Omega-3" milk product as "fat free" because the milk contained 1 gram of fat per

7

serving due to the added Omega-3 oil blend. *Id.* at *1. To demonstrate an ascertainable loss, plaintiffs alleged the lower prices of several skim milk products and another fat free brand that contained Omega-3s but did not contain a full gram of fat. Smart Balance argued the skim milk products were not appropriate comparators because they did not contain Omega-3s, and that the other fat free brand was not an appropriate comparative product because it did not have one of the characteristics plaintiffs were seeking when they bought the product. *Id.* at *10. The court held the allegations were insufficient to allege an ascertainable loss. According to the court, "the more apt comparison necessary to calculate damages with a reasonable degree of certainty would be a product with Omega-3s and at least 1 gram of fat, which is what was ultimately delivered." *Id.* at 11. The court continued, "Plaintiffs detail the price of Fat Free Skim Milk with Omega-3s, but Plaintiffs do not allege whether a comparable product exists with 1 gram of fat and if so, its price." *Id.*; *see Mladenov*, 124 F. Supp. 3d at 375-76.

Even if the Court were to accept a frying pan with nonstick properties as an appropriate comparison despite Brown's claim that she *received* something else, Brown's allegation that the Ninja pan she received is comparable to the Farberware pan is entirely conclusory. The complaint is devoid of any facts showing the pan is made of similar quality materials and has the premium features of the Ninja pan. Brown alleges only that the Farberware pan is a 12-inch nonstick frying pan. *See*

8

Compl. ¶ 36. But saying two frying pans are comparable because they are both nonstick pans is like saying a Ford is comparable to a Mercedes-Benz because they are both cars. Simply identifying another product of the same general type without describing the product's characteristics and qualities that make it comparable to the challenged product is insufficient. *See Stewart*, 2012 WL 4168584, at *10-11; *Mladenov*, 124 F. Supp. 3d at 375-76. Brown must "plead specific facts setting forth and defining the ascertainable loss suffered." *Solo*, 2007 WL 1237825, at *3. She has not done so.

Moreover, Brown's allegation that the Ninja and Farberware pans are comparable is refuted by the product descriptions on the Farberware and Ninja websites cited in the complaint (¶ 36 nn.21 & 23).[1] Brown expressly relies on these websites and the Court therefore should consider them when determining the plausibility of her claim. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (court may consider on a motion to dismiss "matters incorporated by reference or integral to the claim"); *In re Burlington Coat Factory Sec. Litig.*, 114

---

[1] *Compare* Farberware, *12-Inch Nonstick Fry Pan*, *available at* https://farberwarecookware.com/products/farberware-cookstart-aluminum-diamondmax-nonstick-frying-pan-12-inch-aqua, *with* Ninja, *Ninja NeverStick Premium 12-inch Fry Pan*, *available at* https://www.ninjakitchen.com/products/ninja-neverstick-premium-12-inch-fry-pan-zidC30030 (last visited Mar. 14, 2025). These are the same websites that were cited in paragraph 36 of the original complaint. *See Brown*, No. 1:23-cv-21135-ESK-MJS, Doc. 1, ¶ 36 nn. 21 & 23. The website links in the original complaint are functional.

F.3d 1410, 1426 (3d Cir. 1997) (finding that concerns about considering materials outside the complaint are dissipated when the plaintiff has actual notice and has relied upon the materials in framing the complaint).

Brown's only factual allegation to support the comparability of the Farberware and Ninja pans is incorrect. Brown contends that both pans are oven safe to 500 degrees. Compl. ¶ 23. However, the Farberware website states that its pan is oven safe only to ***350 degrees***. *Id.* at n.13. This alone says a lot about the different quality of materials used to manufacture each pan. The websites provide additional information establishing that the Farberware and Ninja pans are *not* comparable[2]:

- The **Farberware** 12-inch fry pan is made of aluminum with a "silicone polyester" exterior finish, has a phenolic resin (*i.e.*, plastic) handle, and is *not* compatible with induction stoves.

- The **Ninja** Premium 12-inch fry pan is made of a "heavy-gauge 4.5 mm aluminum base" with a "shot-blasted, hard-anodized" exterior, has a premium stainless-steel handle, and is compatible with induction stoves.

- The pictures on these websites (Figs. 1 and 2 below) illustrate these clear differences in quality and materials and show the two pans are not in the same class.

---

[2] *See* note 1, *supra*.

**Fig. 1 - Farberware 12-inch fry pan**



**Fig. 2 -  Ninja 12-inch fry pan**



The pans are obviously different. A visual comparison of the two pans reveals that the Ninja pan is twice as thick as the Farberware pan and has a handle made of stainless steel rather than plastic. The difference in materials and quality is evident.

In sum, Brown has not shown that the product she received was worth less than the $39.99 she paid (and which Brown alleges was the value of the product promised), nor has she shown that the Ninja pan is worth no more than the Farberware pan.[3] Therefore, Brown has not shown she has an ascertainable loss under a benefit-of-the-bargain theory.[4]

B.    Plaintiff has not pleaded facts showing any out-of-pocket loss.

Brown also has not shown she has an out-of-pocket loss. As an initial matter, the complaint nowhere asserts an out-of-pocket theory of ascertainable loss. Brown argued in her pre-motion letter that SharkNinja conceded in its notice of removal that she has alleged an out-of-pocket loss based on *Robey*. But SharkNinja was merely showing, for the purpose of establishing the *amount in controversy*, that Brown has *an argument* that she and the putative class potentially could recover

---

[3] Brown's conclusory reference to other unidentified nonstick cookware products that purportedly cost less than the Ninja pan is also insufficient to carry her pleading burden. *See* Compl. ¶ 36.

[4] Brown also has not shown that her Ninja pan without the nonstick properties is not worth $39.99 considering her allegation that the Ninja pan regularly sells for $59.99 (Compl. ¶ 36). Brown alleges no facts to suggest her Ninja pan is worth less than the 33% discount she already received.

under an out-of-pocket theory. SharkNinja based this on a single sentence in the complaint alleging that the Ninja pan Brown purchased is "useless as a purported non-stick pan." Compl. ¶ 33. The complaint does not base Brown's claim of ascertainable loss on this allegation as there is no reference to the measure of damages for a "useless" product. Instead, the complaint shows that Brown continues to pursue a "price premium" or benefit-of-the-bargain theory of loss.[5] *See* Compl. ¶¶ 36-37. In any event, the viability of the out-of-pocket theory in the context of Brown's claim is a question of law for the Court, which the parties have not yet briefed and the Court has not addressed. For the reasons below, the Court should reject it.

The New Jersey Supreme Court reaffirmed in *Robey* that a plaintiff experiences an out-of-pocket loss only when the product is "worthless" or "essentially unusable for its intended purpose or causes buyers to incur additional costs." 311 A.3d at 471-72; *see Brown*, No. 1:23-cv-21135-ESK-MJS, Doc. 21, at 9 ("Out-of-pocket loss is only applicable if the product is essentially worthless."). Few marketed products are truly worthless, and the Ninja pan certainly is not one of them.

---

[5] Although Brown now contends her Ninja pan failed to work properly, her theory of ascertainable loss remains the same price premium theory as her first complaint. Brown has simply included some additional, albeit insufficient, facts to support that price premium theory. *Compare Brown*, No. 1:23-cv-21135-ESK-MJS, Doc. 1, ¶ 36 *with* Compl. ¶¶ 36-37.

Although a court interpreting *Robey* could potentially disagree (as SharkNinja noted in its notice of removal), the phrase "unusable for its intended purpose" in the present context should be interpreted to mean unusable *as a frying pan*, not unusable as a *nonstick* frying pan, which would be too narrow a reading. The product's intended purpose is for cooking food. A nonstick surface is simply one of its features. Brown does not allege the pan is unusable for cooking food. In contrast, a "worthless" product has *no* usefulness.

This case is unlike *Lee v. Carter-Reed Co.*, 4 A.3d 561 (N.J. 2010), where the New Jersey Supreme Court found a product was worthless. There, the plaintiff bought a dietary supplement the manufacturer promised would shrink belly fat, improve mood, combat metabolic syndrome, reduce anxiety, and raise energy levels—but which allegedly did none of those things. *Id.* at 568. The court held that if the supplement provided "none of the benefits claimed" it was nothing more than "a bottle of broken promises" and each purchase was an out-of-pocket loss. *Id.* at 579-80. Reminiscent of the proverbial snake oil, such a product is truly worthless; it provides no benefit to the consumer and has no value. The same cannot be said here. Brown received premium cookware made with high-quality materials that functions as a frying pan and is "oven safe to 500 degrees" and "safe for induction stoves." Brown does not allege otherwise and nowhere contends her Ninja pan will not work

14

for cooking food.[6] Brown's Ninja pan is not *un*usable; it clearly has value as a frying pan. Unlike the plaintiff in *Lee*, if Brown were to be refunded the cost of her Ninja pan, she would be receiving a windfall. Accordingly, Brown has not pleaded facts showing she has an out-of-pocket loss.

## II.    The Court should strike the class allegations because it is apparent from the face of the complaint that this case cannot proceed as a class action.

Even if the Court concludes that Brown's NJCFA individual claims survive dismissal, it is clear from the complaint that the claims are not suitable for class treatment. The proposed class is not ascertainable and contains many uninjured consumers who lack Article III standing. Because no amount of discovery can cure these ills, the Court should strike the class allegations.

### A.    The proposed class is not ascertainable.

Brown seeks monetary damages on behalf of the proposed class (Compl. ¶ 45) and therefore seeks certification pursuant to Rule 23(b)(3). "Class ascertainability is 'an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3).'" *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013) (quoting *Marcus v. BMW of North. Am., LLC*, 687 F.3d 583, 592-93 (3d Cir. 2012)). This

---

[6] Brown's concerns have nothing to do with whether the pan will cook food. According to the complaint, consumers who prefer nonstick cookware do so for reasons of convenience, health, or taste. Compl. ¶ 15.

case is not suitable for treatment as a class action because the class definition does not satisfy the Third Circuit's ascertainability requirement.

Ascertainability has two elements. First, "the class must be defined with reference to objective criteria," and second, "there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013) (citing *Marcus*, 687 F.3d at 593-94). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus*, 687 F.3d at 593. Moreover, the members of a class must be identifiable at the time of certification. *Id.* at 592-93 ("[A]n essential prerequisite of a class action … is that the class must be *currently* and readily ascertainable[.]") (emphasis added).

Brown has not defined the class based on objective criteria, nor is there any reliable or administratively feasible way to identify class members. The proposed class is defined as follows:

> All consumers who, within the statute of limitations period, purchased in the State of New Jersey (whether online or in-person) NeverStick Premium Cookware Products manufactured, marketed, advertised, distributed and/or sold by Defendant which Defendant claimed or warranted (a) "Never sticks, chips, or flakes" and/or "Won't stick, chip or flake" compared to competitor "traditional pans" that "can rapidly lose nonstick," (b) that "[t]he difference is in the degrees" because the products are manufactured with a maximum manufacturing temperature of 30,000°F whereas competitor "traditional pans" are only

16

manufactured at 900°F, or (c) "with a max manufacturing temperature of 30,000°F" or "created at a max temp of 30,000°F," the products "won't rapidly lose nonstick like traditional nonstick pans made at 900°F can" (the "Class Products").

Compl. ¶ 38.

This class definition fails at the threshold because it is not defined by reference to objective criteria. It is comprised of consumers who bought Ninja products that were advertised using one of three claims. Determining whether each putative class member read or saw one of these claims involves *subjective* criteria, *i.e.*, the consumer's personal recollection.

Similarly, identifying class members will require a determination as to whether each person read or saw one of these three advertising claims. This is not possible to do "without extensive and individualized" inquiries into each consumer's purchasing experience, including what, if any, advertisements each consumer viewed before making the purchase, and therefore "a class action is inappropriate." *Marcus*, 687 F.3d at 593.

Another court in this district reached the same conclusion in a similar case and struck the class allegations. In *Mladenov*, the plaintiffs alleged that multiple New Jersey supermarkets falsely advertised bread and bakery products as made in house from scratch when they were either frozen or premade and reheated, and/or not made in the store. 124 F. Supp. 3d at 366-67. The proposed class was defined to include

purchasers of bread and bakery products that were advertised at the time as "made in house" and/or "freshly baked," etc. *Id.* at 366, 370. The court held that the class was not ascertainable because "[i]ndividual and extensive fact-finding" would be needed to determine whether the bread and bakery products were advertised as baked fresh on the particular occasions putative class members bought them. *Id.* at 371. The court found that this fact-finding would "trigger mini-trials for each person who purchased the relevant products as to what signs were present at the time he or she made the purchase at issue." *Id.*; *see also Martinez v. Equifax Inc.*, 2016 WL 226639, at *3-4 (D.N.J. Jan. 19, 2016) (striking the class allegations when determining class membership would require individualized fact-finding). The same is true here. Accordingly, neither requirement for ascertainability is met and the Court should strike the class allegations.

B.    <u>The proposed class necessarily includes many uninjured consumers who lack Article III standing.</u>

In its October 23, 2024 Order dismissing Brown's first complaint, the Court rejected Brown's claim that she was injured based on her expectation that her Ninja pans "would not chip, flake, or lose their nonstick properties due to [SharkNinja's] claims to that effect, 'Neverstick' brand name, purported 30,000-degree manufacturing process, or the like," because "the complaint d[id] not allege that that expectation was unmet." *Brown*, No. 1:23-cv-21135-ESK-MJS, Doc. 21 at 10 (citing *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011)). The Court

18

explained that "[w]ithout claiming that her pans actually chipped, flaked, or lost their nonstick properties, plaintiff does not plead how the pans 'fell short of [her] expectations.'" *Id.* at 9 (citing *Mason*, 774 F. Supp. 2d at 703). Brown then filed the present complaint alleging that her pan's nonstick surface "never worked" and "food stuck to the pan immediately with her initial usage." Compl. ¶ 33. The basis for Brown's grievance regarding her Ninja pan is otherwise unchanged from the first complaint. The individualized nature of Brown's amended claim—apparent from the face of the complaint—forecloses certification of her claim on a class basis. What is proof for Brown must be proof for the class.

The proposed class cannot be certified because most (if not the vast majority) of the consumers in the proposed class have not been injured and therefore lack Article III standing. Unlike Brown, most consumers who have bought Ninja pans have no injury because their pans have not "stuck, chipped, or flaked." The Supreme Court has made clear that "[e]very class member must have Article III standing in order to recover individual damages. Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (cleaned up). As a result, a class may not include individuals who have not suffered an injury-in-fact. In the wake of *TransUnion*, the Third Circuit has likewise acknowledged that "the potential inclusion of some members without standing in a class can result in legitimate Rule

19

23 challenges." *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 155 (3d Cir. 2023) (cleaned up).

Brown seeks damages in this action and therefore must satisfy the predominance requirement in Rule 23(b)(3). For an action to be appropriate for class treatment, "[i]ssues common to the class must predominate over individual issues." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (cleaned up). In short, the claims Brown seeks to certify must be "capable of proof at trial through evidence that is common to the class rather than individual to its members." *Hydrogen Peroxide*, 552 F.3d at 311-12.

Faced with a motion to strike the class allegations, Brown "bears the burden of advancing a prima facie showing that the class action requirements of [Rule] 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *In re Ry. Indus. Emp.*, 395 F. Supp. 3d at 498. It is clear on the face of the complaint Brown cannot carry this burden.

First, it is a virtual certainty that the proposed class includes many New Jersey consumers whose Ninja pans have not "stuck, chipped, or flaked." Article III does not permit a federal court to award these individuals damages. *See Mr. Dee's Inc. v. Inmar, Inc.*, 127 F.4th 925, 934 (4th Cir. 2025) (holding that a proposed class with "a high share of uninjured members [] raises Article III standing concerns" that go "to the existence of judicial authority" and thus "are not to be ignored"). Determining which proposed class members lack Article III standing would require the Court to conduct thousands of individual inquiries into each member's experience with the Ninja pans. *See* Compl. ¶ 40 (alleging that there are "thousands of purchasers of the Class Products"). There is no method to identify these uninjured persons using common evidence.

In *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275 (D.N.J. 2011), the court dismissed at the pleading stage class allegations that a Keurig coffee brewing machine failed to brew the represented amount of coffee. The court found that to establish an NJCFA claim, the putative class would have to show that their coffee brewers were defective and "[o]ther courts in this District have found that proving a defect is a highly individualized inquiry unsuitable for class treatment." *Id.* at 284 (collecting cases). The complaint did not allege that all purchasers in New Jersey had experienced the defect, and the plaintiff acknowledged that the class included persons whose coffee brewers had not yet failed. *Id*. at 284-85. As a result,

the court held that the putative class included uninjured members and therefore common issues did not predominate over individual issues. *Id.* at 285; *see Hydrogen Peroxide*, 552 F.3d at 311 (finding that predominance is defeated when the fact of injury cannot be proven through common proof); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 51-58 (1st Cir. 2018) (reversing certification order because the individual inquiries necessary to identify uninjured class members would predominate and render the case unmanageable). The Court should strike the class allegations here for the same reasons.

Second, Brown cannot prove the elements of her NJCFA claim using class-wide evidence. "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Hydrogen Peroxide*, 552 F.3d at 311. This Court has already determined that Brown's claim requires a showing that the Ninja pans "fell short of [her] expectations." *Brown*, No. 1:23-cv-21135-ESK-MJS, Doc. 21 at 9 (analyzing the unlawful-conduct prong of Brown's NJCFA claim through the lens of "unmet expectations"). Brown has now alleged that her expectations were not met because the nonstick surface of her pan did not work. However, Brown cannot establish through common proof that proposed class members experienced this unmet expectation. Indeed, Brown has not alleged that any other proposed class member's pan failed to work, let alone that *all* class members' pans failed to work.

Even if Brown could allege that all class members' pans failed to work (and she cannot), the proof necessary to show that each member's pan failed would be highly individualized. *See Green*, 279 F.R.D. at 284-85 ("proving a defect is a highly individualized inquiry"). Proof that each class member experienced an ascertainable loss would be individualized for the same reason. If a class member's pan has not failed to work there is no loss. *Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 122 (D.N.J. 2003) ("Under the NJCFA, loss is not assumed. Rather, it is an element that must be proven by each plaintiff."). Whether class members' pans failed to work inherently requires individualized evidence that would vary from member to member. These individual inquiries would result in "mini-trials" that would overwhelm any common issues in the case. There also is no administratively feasible way to conduct thousands of these inquiries.

These are not *potential* obstacles Brown *might* face in attempting to certify a class such that she should be allowed to proceed through discovery; the nature of Brown's alleged injury makes these impediments to certification a *certainty*. And it is because these insuperable hurdles are apparent on the face of the complaint that this is one of those cases where striking the class allegations is appropriate. SharkNinja should not be subjected to many months of expensive and time-consuming discovery when the outcome is already known. Brown cannot identify

any discovery she should be allowed to pursue that would cure these Article III standing problems or eliminate the need for these individual inquiries.

* * *

For the above reasons Brown's claims are not suitable for class treatment. However, this doesn't mean New Jersey consumers whose Ninja pans have not worked properly are left without a remedy. As shown on the Ninja website cited in the complaint (¶ 36 n.21), the Ninja pans come with a 10-year replacement guarantee if the nonstick surface sticks, chips, or flakes when used as directed.

## <u>CONCLUSION</u>

For all these reasons, Brown has not shown she suffered an ascertainable loss of money or property. The NJCFA claim therefore fails and the complaint should be dismissed. Even if the Court does not dismiss the complaint, it should strike the class allegations because the proposed class is not ascertainable and would include uninjured members lacking Article III standing who cannot be identified without thousands of individualized inquiries.

Dated: March 14, 2025                Respectfully submitted,

SHOOK HARDY & BACON L.L.P.

 <u>/s/ Thomas J. Sullivan</u>
Thomas J. Sullivan
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, PA 19103

24

Tel: (215) 278-2555
tsullivan@shb.com

*Attorneys for SharkNinja Operating LLC*